# S. G. V. Co. v. S. G. V. Co.

*Contract—Sale—Evidence—Master's findings of facts.*

A claim against an insolvent corporation in the hands of a receiver, for breach of contract, will not be allowed, where a master appointed to make distribution, reports findings of fact from sufficient and competent evidence and sustained by the court, that there was an oral agreement by the claimant to deliver to the company certain patented devices, which were to be accepted if they proved satisfactory, that, after trial, for a considerable time they failed to meet the requirements of the company and were commercially valueless, and that because of this the company discontinued their further use.

Argued March 3, 1919. Appeal, No. 105, Jan. T., 1919, by Vulcan Motor Devices Company, from decree of C. P. Berks Co., No. 1134, Equity Docket 1914, overruling exceptions to master's report in case of S. G. V. Company v. S. G. V. Company. Before STEWART, MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Exceptions to report of Stephen M. Meredith, Master, appointed to make distribution of a fund derived from the assets of the S. G. V. Company, an insolvent corporation.

The court dismissed the exceptions to the report. The Vulcan Motor Devices Company, a creditor, appealed.

*Errors assigned* were in dismissing exceptions to the master's report.

*Ellis Ames Ballard,* with him *Harvey F. Heinley,* for appellant.

*C. H. Ruhl,* for appellee.

OPINION BY MR. JUSTICE FRAZER, April 21, 1919:

The S. G. V. Company, a corporation engaged in the manufacture of automobiles, became insolvent and a re-

ceiver was appointed to liquidate its assets. The Vulcan Motor Devices Company, one of its creditors, presented a claim for $11,465.12. Of this amount $1,325.92 was admitted to be due, the balance, $10,139.20, being disputed.

The Vulcan company owned a patented electrical gear shift for automobiles, and, at the request of the president of the S. G. V. Company, two samples of the device were installed in cars manufactured by the latter company, and the claim is now made that the S. G. V. Company agreed to purchase 500 gear shifts, together with an equal number of rotary switches, or swivel devices, an appliance required for use in connection with each gear shift. A number of these inventions were completed by the Vulcan company and accepted by the automobile company and the present action is based on a claim for the price of the remainder of the completed order the company failed to accept and for the cost of labor and materials used in those not completed.

The defense is based on the contention that no contract existed between the parties for a definite number of shifts or switches, that the S. G. V. Company was bound to accept and pay for them only on condition the devices operated satisfactorily, that those delivered were not satisfactory, but on the contrary were so defective and inefficient the company was obliged to discontinue the use of the contrivance on its cars. The master found the orders were given in fact on condition the devices proved satisfactory; that after trial for a considerable time they failed to meet the requirements of the company and were commercially valueless and, because of their failure to operate properly, the S. G. V. Company discontinued their use on its automobiles; and from these findings, concluded there could be no further recovery under the contract beyond the sum admitted to be due.

Under the familiar rule followed in many cases the findings of an auditor, based upon competent evidence, and especially when sustained by the court below, will

not be set aside in absence of clear error: Strause v. Berger, 220 Pa. 367, and cases there cited; Lentz's Est., 261 Pa. 530.

The president of the Vulcan company testified that in a preliminary conversation with the president of the S. G. V. Company, 500 gear shifts were mentioned as the number his company would require, and subsequently a written contract was prepared and considered by the parties, though never executed. On the other hand, the president of the S. G. V. Company testified he estimated they could use 500 of the devices, this number being the expected output of their cars during the year, it being understood, however, the appliances were to work properly and to the satisfaction of the S. G. V. Company, and that the signing of the contract was purposely delayed to ascertain whether they would so operate. Defendant's factory manager, who was present at the interview, testified his company expected to use 500 of the appliances on their cars, and that the president refused to sign the contract "until the whole thing was satisfactory" and upon this condition the verbal order was given. That the devices furnished failed to operate properly is established by ample testimony. It thus appears sufficient evidence was produced to support the conclusion of the master that, although a written agreement was contemplated, none was actually entered into, and orders for specific devices were given at different times on condition they were to be satisfactory to the purchasing company when delivered, that the appliances delivered were faulty and deficient in material, workmanship and design to such extent as to render their use impossible and for that reason the written contract was not executed.

The judgment is affirmed.